UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT LEE STEPP,
    Plaintiff,

v.                                              Case No. 8:22-cv-590-KKM-AAS

C. BROWN,
A. HAGENBERGER
M. GONZALEZ,
J. ENNIS,
C. LAVIGNE, and
CHAD CHRONISTER,
    Defendants.
_____

# ORDER

Plaintiff Robert Lee Stepp, a convicted and sentenced state prisoner, sues under 42 U.S.C. § 1983. A prior order identified deficiencies in Stepp's Amended Complaint and dismissed it without prejudice to filing a second amended complaint. (Doc. 13.) Stepp now proceeds on his Second Amended Complaint. (Doc. 14.)

Under 28 U.S.C. §§ 1915(e) and 1915(A), a district court is required both to review the complaint and to dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. The Second Amended Complaint is entitled to a generous interpretation. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**I.  The Second Amended Complaint**

Stepp alleges the following occurred on August 24, 2019, (Doc. 14 at 6–7):

> I was sitting in my car at Burnett Park located by 11609 Claypit Rd when Deputy C. Brown approached me asking what I was doing[.] I told him I was waiting on deliveries for Uber Eats[.] 2 more cars pulled up with Deputy A. Hagenberger and Corporal M. Gonzalez[.] [T]hey wanted me to get out of this car to talk[.] I said not unless I was under arrest to which Deputy C. Brown said he would make something up to arrest me with[.] [illegible] I started my car and drove away[.] [W]hen I got to the Claymore Apartment Complex I caught a flat tire[.] I then left on foot running to Bryan Rd. Ln. [W]hen I looked back several deputies were chasing me and I noticed a K9[.] When I seen the K9 I layed[sic] down with my arms out in front of me hoping the K9 would be called off since I was no longer resisting or running but it was not called off[.] The K9 started biting me on my left leg[.] K9 Deputy J. Ennis approached saying "good boy telling me I bet you won't run anymore" because I was on the ground not resisting[.] K9 Deputy J. Ennis should have right away[,] instead she gave commands and the K9 would [illegible] and then bite [illegible] again[.] After about 5 to 7 minutes she gave a command at which time the K9 bit into my calf and tore a chunk out of my calf[.]

After the attack, Stepp received medical treatment at Tampa General Hospital. (*Id.* at 6.) He sustained permanent scarring, a limp, and several puncture wounds, and he is "missing a large chunk of [his] calf." (*Id.*) Stepp seeks to recover $5 million in compensatory and punitive damages. (*Id.*) He also wants the K9 to be retired and the deputies to be retrained or terminated. (*Id.*)

## II. The Claims

Stepp sues Deputy J. Ennis for the use of excessive force. (*Id.* at 7.) He alleges that Ennis commanded the K9 to attack him after he was on the ground with his

2

arms in front of him and no longer resisting arrest. (*Id.*) He alleges that, at Ennis's command, the K9 attacked him for five to seven minutes, tearing a "chunk out of [his] calf." (*Id.*)

Stepp sues Deputy C. Brown, Deputy A. Hagenberger, Deputy C. Lavine, and Corporal M. Gonzalez for failing to intervene in the attack to stop the use of excessive force. (*Id.*) He alleges that Brown, Hagenberger, Lavine, and Gonzalez "stood by and failed to take reasonable steps to protect [him]" from Deputy Ennis, who commanded the K9 to attack him after he ceased to resist arrest. (*Id.*)

Stepp sues Sheriff Chad Chronister for failing to train the deputies not to use excessive force or to intervene when another deputy uses excessive force. (*Id.*) He neglects to state whether he sues Sheriff Chronister in his individual or official capacity.

    **A.**    **Excessive Force and Failure to Intervene**

"A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006)). "'[S]ome degree of physical coercion or threat'" during an arrest is permitted. *Vineyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"The merits of excessive force claims are fact sensitive." *Anderson on behalf of MA v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (discussing precedent governing the constitutionality of using a K-9 to apprehend a suspect). Courts consider several factors to determine whether an officer's use of force was objectively reasonable, including: "'(1) the need for the application of force, (2) the

relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Hadley*, 526 F.3d at 1329 (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)). "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley*, 526 F.3d at 1330. Furthermore, an officer may be liable for failing to intervene if the officer is present at the scene and "fails to take reasonable steps to protect the victim of another officer's use of excessive force." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (citations omitted).

Stepp alleges that he was running from the deputies, but when he saw the K9, he laid on the ground with his arms in front of him. After he was no longer running or resisting arrest, the K9 started to bite him. At Ennis's command, the K9 attacked Stepp for five to seven minutes. Ennis commanded the K9 to bite Stepp's calf, tearing a "chunk out of [his] calf." He alleges that Brown, Hagenberger, Lavine, and Gonzalez "stood by" and failed to take any steps to stop the attack. These factual allegations are sufficient to proceed to service of process on Stepp's claims of excessive force and failure to intervene.

B.  **Failure to Train**

In one sentence, Stepp alleges that Sheriff Chronister "is liable for failing to train the deputies to not use excessive force or to intervene when a fellow deputy uses excessive force." (Doc. 14 at 7.) Stepp alleges no facts in support of this allegation. The Court construes the allegation as a claim against Hillsborough County for failing to train the deputies.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the [county] that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). "[A] [county] cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

In "limited circumstances," a county may be liable for failing to train its employees. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989) ("A police department's failure to train or supervise its officers can constitute a 'policy' sufficient to trigger governmental liability but only in limited circumstances[.]"). These circumstances arise when "employees cause a constitutional injury as a result of the [county's] policy- or custom-based failure to adequately train or supervise its employees." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011).

Although a county "rarely will have an express written or oral policy [or custom] of inadequately training or supervising its employees," *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998), a county may be liable for implementing such a policy or custom when its failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *Canton*, 489 U.S. at 388. "To establish . . . such 'deliberate indifference,' a plaintiff must present some evidence that the [county] knew of a need to train and/or

supervise in a particular area and the [county] made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "Without notice that . . . training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen [a policy] that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

"Establishing notice of a need to train or supervise is difficult." *AFL-CIO*, 637 F.3d at 1189. "A [county] may be put on notice in two ways." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009). First, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Second, where "the need for more or different training is so obvious, . . . the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

In one sentence, Stepp attempts to state a claim against Hillsborough County for failing to train the deputies not to use excessive force and to intervene when another deputy uses excessive force. However, he neglects to allege any facts that would establish the elements of the claim. The failure-to-train claim is dismissed without prejudice. Because this is Stepp's initial attempt to allege a failure-to-train claim, he is permitted an opportunity to amend.

### III. Conclusion

The Court will permit Stepp another opportunity to amend his Second Amended Complaint to remedy the deficiencies of his failure-to-train claim. Accordingly, it is **ORDERED** that:

1. Stepp's claim against Deputy Ennis for the use of excess force, as currently alleged, may proceed to service of process.

2. Stepp's claims against Deputy C. Brown, Deputy A. Hagenberger, Deputy C. Lavine, and Corporal M. Gonzalez for failure to intervene, as currently alleged, may proceed to service of process.

3. Stepp's claim against Sheriff Chronister (construed as a claim against Hillsborough County) for failure to train is **DISMISSED WITHOUT PREJUDICE**.

4. If Stepp wishes to amend his Second Amended Complaint to remedy the noted deficiencies of his failure-to-train claim, he shall file a third amended complaint no later than **January 9, 2023.**

    b. To amend his Second Amended Complaint, Stepp should complete a new civil rights complaint form, titling it "Third Amended Complaint." The Third Amended Complaint must include all of Stepp's claims that he wishes to pursue and may not refer back to, or incorporate, the original Complaint, the Amended Complaint, or the Second Amended Complaint. The Third Amended Complaint shall supersede the Second Amended Complaint. *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

    c.    The Third Amended Complaint shall be subject to initial screening under 28 U.S.C. § 1915A.

2.    If Stepp fails to file a Third Amended Complaint by the above deadline, or fails to seek an extension of time to do so, this action shall proceed to service of process on Stepp's excessive force and failure-to-intervene claims as currently alleged in the Second Amended Complaint.

3.    Stepp must advise the Court of any change of address. He must entitle the paper "Notice to the Court of Change of Address" and must exclude any motions from the notice. Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

4.    The Clerk is **DIRECTED** to mail to Stepp a copy of both the standard prisoner civil rights complaint form and this order.

**DONE** and **ORDERED** in Tampa, Florida on December 19, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge